1  CORYNNE MCSHERRY (SBN 221504)
   corynne@eff.org
2  MATT ZIMMERMAN (SBN 212423)
   mattz@eff.org
3  ELECTRONIC FRONTIER FOUNDATION
   815 Eddy Street
4  San Francisco, CA 94109
   Telephone: (415) 436-9333
5  Facsimile: (415) 436-9993

6  DAVID HALPERIN (admitted *pro hac vice*)
   davidhalperindc@gmail.com
7  1530 P Street NW
   Washington, DC 20005
8

9  ANDREW P. BRIDGES (SBN 122761)
   abridges@fenwick.com
10 JAMES J. VARELLAS III (SBN 253633)
   jvarellas@fenwick.com
11 KATHLEEN LU (SBN 267032)
   klu@fenwick.com
12 FENWICK & WEST LLP
   555 California Street, 12th Floor
13 San Francisco, CA 94104

14 Attorney for Plaintiff
   PUBLIC.RESOURCE.ORG
15

16              UNITED STATES DISTRICT COURT

17            NORTHERN DISTRICT OF CALIFORNIA

18               SAN FRANCISCO DIVISION

19

20 | PUBLIC.RESOURCE.ORG, | ) | Case No. 13-cv-00815-SC |
   |---|---|---|
   | | ) | |
   | Plaintiff, | ) | **NOTICE OF MOTION AND MOTION** |
   | | ) | **FOR DEFAULT JUDGMENT AND** |
   | v. | ) | **MEMORANDUM OF POINTS AND** |
   | | ) | **AUTHORITIES IN SUPPORT** |
   | SHEET METAL AND AIR CONDITIONING | ) | **THEREOF** |
   | CONTRACTORS' NATIONAL | ) | |
   | ASSOCIATION, INC., | ) | Date:       July 19, 2013 |
   | | ) | Time:       10:00 a.m. |
   | Defendant. | ) | Courtroom: 1, 17th Floor |
   | | ) | Judge:      The Hon. Samuel Conti |

1   <u>**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT**</u>

2   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3       **PLEASE TAKE NOTICE** that Plaintiff Public Resource hereby moves for default

4   judgment against Defendant Sheet Metal and Air Conditioning Contractors' National Association.

5   The hearing will occur on July 19, 2013, at 10:00 a.m., or at another time that the Court

6   designates, in the courtroom of the Honorable Samuel Conti, San Francisco Courthouse,

7   Courtroom 1 - 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102.  This Motion is

8   based on this Notice of Motion and Motion, the accompanying Memorandum of Points and

9   Authorities, the Court's files in this action, the arguments of counsel, and any other matter the

10  Court may properly consider.

11

12  Dated:    May 29, 2013                    By: */s/ Andrew P. Bridges*
                                              CORYNNE MCSHERRY (SBN 221504)
13                                            corynne@eff.org
                                              MATT ZIMMERMAN (SBN 212423)
14                                            mattz@eff.org
                                              ELECTRONIC FRONTIER FOUNDATION
15                                            815 Eddy Street
                                              San Francisco, CA 94109
16                                            Telephone: (415) 436-9333
                                              Facsimile: (415) 436-9993
17
                                              DAVID HALPERIN (admitted *pro hac vice*)
18                                            davidhalperindc@gmail.com
                                              1530 P Street NW
19                                            Washington, DC  20005

20                                            ANDREW P. BRIDGES (SBN 122761)
                                              abridges@fenwick.com
21                                            JAMES J. VARELLAS III (SBN 253633)
                                              jvarellas@fenwick.com
22                                            KATHLEEN LU (SBN 267032)
                                              klu@fenwick.com
23                                            FENWICK & WEST LLP
                                              555 California Street, 12th Floor
24                                            San Francisco, CA  94104

25                                            Attorneys for Plaintiff
                                              PUBLIC.RESOURCE.ORG
26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.    INTRODUCTION .................................................................................................................. 1

II.   STATEMENT OF FACTS .....................................................................................................3

    A.   The Parties .................................................................................................................. 3

    B.   SMACNA's Efforts to Have Its Standards Incorporated Into Law ........................ 3

    C.   The Federal Government and State Governments Have Incorporated RS-35 Into Law ............................................................................................................ 5

    D.   This Dispute ................................................................................................................ 6

III.  JURISDICTION ......................................................................................................................8

    A.   Subject Matter Jurisdiction ...................................................................................... 8

    B.   Personal Jurisdiction ................................................................................................. 9

        1.   Purposeful Direction ...................................................................................... 10

        2.   Arising From Forum-Related Activities .................................................... 10

        3.   Reasonableness ............................................................................................... 11

IV.   ARGUMENT ..........................................................................................................................11

    A.   The Motion Is Procedurally Proper ........................................................................ 12

    B.   The Discretionary Factors Favor A Default Judgment ......................................... 12

        1.   The Merits and Sufficiency of Public Resource's Complaint (Factors 2 and 3).............................................................................................. 12

            a.   The Law Is Not Subject to Copyright Protection......................... 12

            b.   Standards That Become Law Are Not Subject to Copyright ................................................................................................ 14

            c.   Copyright Protection is Particularly Harmful Under the Circumstances ....................................................................................... 21

        2.   Prejudice to Public Resource (Factor 1).................................................... 22

            a.   Prejudice to Public Resource ............................................................ 22

            b.   Prejudice to the Public Interest ........................................................ 22

V.    RELIEF SOUGHT ..................................................................................................................23

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

<small>CASES</small>

4

*Aetna Life Ins. Co. v. Haworth,*
    300 U.S. 227 (1937) ....................................................................................... 8

5

*Aldabe v. Aldabe,*
    616 F.2d 1089 (9th Cir. 1980) ..................................................................... 11

6

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,*
    223 F.3d 1082 (9th Cir. 2000) ..................................................................... 10

7

8

*Banks v. Manchester,*
    128 U.S. 244 (1888) ..................................................................................... 13

9

10

*Bldg. Officials & Code Admin. v. Code Tech., Inc.,*
    628 F.2d 730 (1st Cir. 1980) ....................................................................... 16

11

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ..................................................................................... 11

12

13

*Campbell v. Acuff-Rose Music, Inc.,*
    510 U.S. 569 (1994) ..................................................................................... 21

14

*CCC Info. Servs. Inc. v. McLean Hunter Mkt. Reports, Inc.,*
    44 F.3d 61 (2d Cir. 1994) ...................................................................... 18, 19

15

16

*Craigslist, Inc. v. Kerbel,*
    2012 WL 3166798 (N.D. Cal. Aug. 2, 2012) .............................................. 11

17

*Craigslist, Inc. v. Naturemarket, Inc.,*
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) ...................................................... 10

18

19

*Eitel v. McCool,*
    782 F.2d 1470 (9th Cir. 1986) ..................................................................... 11

20

*Harper v. Va. State Bd. of Elections,*
    383 U.S. 663 (1966) ..................................................................................... 14

21

*Howell v. Miller,*
    91 F. 129 (6th Cir. 1898) ............................................................................. 13

22

23

*Mavrix Photo, Inc. v. Brand Techs., Inc.,*
    647 F.3d 1218 (9th Cir. 2011) ................................................................ 10, 11

24

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) .................................................................................... 8, 9

25

26

*Nieman v. VersusLaw, Inc.,*
    2013 WL 1150277 (7th Cir. Mar. 19, 2013) ............................................... 14

27

28

*Panavision Int'l, L.P. v. Toeppen,*
   141 F.3d 1316 (9th Cir. 1998) ................................................................................... 9

*PepsiCo v. Triunfo-Mex, Inc.,*
   189 F.R.D. 431 (C.D. Cal. 1999) ............................................................................. 11

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n,*
   121 F.3d 516 (9th Cir. 1997) ....................................................................... 17, 19, 21

*Schwarzenegger v. Fred Martin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004) ................................................................................... 10

*TeleVideo Sys., Inc. v. Heidenthal,*
   826 F.2d 915 (9th Cir. 1987) ............................................................................... 3, 11

*Veeck v. S. Bldg. Code Cong. Int'l, Inc.,*
   293 F.3d 791 (5th Cir. 2002) (*en banc*), *cert. denied*, 539 U.S. 969 (2003) .................... *passim*

*Walters v. Shaw/Guehnemann Corp.,*
   2004 WL 1465721 (N.D. Cal. Apr. 15, 2004) ....................................................... 12

*Wheaton v. Peters,*
   33 U.S. 591 (1834) ........................................................................................... 12, 13

*World-Wide Volkswagen Corp. v. Woodson,*
   444 U.S. 286 (1980) ................................................................................................ 11

STATUTES

5 U.S.C. § 522 ............................................................................................................ 15

5 U.S.C. § 552 ............................................................................................................ 22

5 U.S.C. § 553 ............................................................................................................ 15

17 U.S.C. § 101. ................................................................................................... 8, 23

17 U.S.C. § 105 ......................................................................................................... 13

28 U.S.C. § 1331 ......................................................................................................... 8

28 U.S.C. § 1338 ......................................................................................................... 8

28 U.S.C. § 2201. ................................................................................................. 8, 23

Minn. Stat. § 216C.30 (1999) ..................................................................................... 6

N.Y. Energy L. § 11-108 (McKinney 2011) ......................................................... 6, 19

OTHER AUTHORITIES

1 C.F.R. pt. 51 ........................................................................................................... 15

1 C.F.R. § 51.3 ........................................................................................................ 5, 6

1 C.F.R. § 51.7 ............................................................................................ 22

10 C.F.R. § 434.403 ............................................................................ 1, 2, 5

10 C.F.R. § 434.701 ................................................................... 2, 5, 15, 23

50 Fed. Reg. 40895 ..................................................................................... 17

65 Fed. Reg. 60000-11 (Oct. 6, 2000) (codified at 10 C.F.R. pts. 434 & 435) ............................. 5

Fed. R. Civ. P. 55 ................................................................................... 11, 12

Compendium II of Copyright Office Practices § 206.01 (1984) ............................................... 13

Minn. R. 7676 (2005) (repealed 2009) ......................................................................... 6

N.Y. Comp. Codes R. & Regs. tit. 19, § 1240.1 (2010) ...................................................... 6, 19

Wash. Admin. Code § 51-11-503 (2006) (repealed 2012) ........................................................ 6

Magna Carta cl. 29 (1297) ................................................................................... 14

1 *Goldstein on Copyright* § 2.5 (Aspen Publishers, Rev. Ed. 2012) .......................................... 16

1 *Nimmer on Copyright* § 5.12 (Matthew Bender, Rev. Ed. 2004) ......................................... 16, 21

Thomas Henry Bingham, *The Rule of Law* (Penguin Press 2011) ................................................ 13

Brief for the United States as Amicus Curiae, *S. Bldg. Code Cong. Int'l, Inc. v. Veeck* (2003) (No. 02-355) ........................... 21

Robert C. Byrd, *The Senate of the Roman Republic: Addresses on the History of Roman Constitutionalism* (Gov't Printing Office 1995) ........................... 14

Peter L. Strauss, *Private Standards Organizations and Public Law*, Columbia Public Law Research Paper No. 13-334, Dec. 27, 2012 ........................... 19

Brian Z. Tamanaha, *On the Rule of Law: History, Politics, Theory* (Cambridge Univ. Press 2004) ........................... 13, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

This case is about the lawful publication of, and public access to, the law. Public.Resource.Org, Inc. ("Public Resource") is a nonprofit corporation dedicated to improving public access to government records and the law.  To do so, it acquires copies of these records, including legal decisions, tax and securities filings, statutes, and regulations, and then publishes them online in easily accessible formats that make them more useful to readers, entirely free of charge.  Its contributions to the public interest have been recognized by the Judicial Conference of the United States and members of Congress, among others.[1]

In the past few years, Public Resource's mission has come to encompass the publication of health and safety codes that federal, state, and local governments have incorporated into law. Standards-setting bodies, like Defendant Sheet Metal and Air Conditioning Contractors' National Association ("SMACNA" or "Defendant") in this case, often develop the codes and then encourage their incorporation into law.  Public access to such codes can be crucial when, for example, there is an industrial accident, a disaster such as the Moore, Oklahoma tornado, or when a homebuyer simply wishes to evaluate whether her builder complied with the law in constructing a house.  Publishing the codes online, in a readily accessible format, makes it possible for reporters and other interested citizens not only to view them easily, but also to search and excerpt them, craft new documents from them comparing health and safety requirements, and otherwise generate new insights.

On October 6, 2000, the United States Department of Energy ("DOE") issued final regulations providing energy efficiency standards for federal commercial and residential buildings.  Among those regulations was 10 C.F.R. § 434.403.2.9.3, which requires that certain components of heating and air conditioning systems be constructed "in accordance with RS-34,

---

[1] *See, e.g.*, Letter from U.S. Representatives John Boehner and Darrell Issa to Carl Malamud, President, Public Resource (Jan. 5, 2011), *available at* https://bulk.resource.org/courts.gov/foia/gov.house.20110105_from.pdf; Letter from the Honorable Lee H. Rosenthal, Chair, Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, to Carl Malamud, President, Public Resource (July 16, 2008), *available at*  https://public.resource.org/scribd/7512576.pdf.

RS-35, and RS-36 (incorporated by reference, *see* § 434.701)." Section 434.701 identifies RS-35 as a manual SMACNA first published in 1985 ("RS-35" or the "1985 Manual").[2] By issuing this final regulation, the DOE incorporated RS-35 into federal law. Multiple states subsequently incorporated RS-35 into their respective laws.

As part of its ongoing work to improve public access to the law, on July 4, 2012, Public Resource published both 10 C.F.R. § 434.403.2.9.3 and its mandatory RS-35 text, *i.e.*, the 1985 Manual. Several months later, SMACNA demanded that Public Resource delete RS-35 from its website, claiming copyright in the document and alleging that the publication constituted infringement of that copyright. In response, Public Resource explained that because RS-35 was part of the law, it was also part of the public domain. Undeterred, SMACNA escalated its threats. Public Resource therefore filed this action for declaratory relief to resolve the controversy and disabled public access to the document pending its outcome. SMACNA was properly served with the Complaint and has expressly refused to respond.

Contrary to SMACNA's contention, copyright law does not bar publication of RS-35. Since 1834, courts have repeatedly held that the law belongs in the public domain, and is therefore material that the public may—and indeed should—publish freely. That principle is fundamental to our legal and democratic systems, and it applies equally to judicial decisions, court records, statutes, regulations, and standards that have been incorporated into law, such as RS-35. Standards-setting organizations, also known as standards-development organizations ("SDOs"), must not be permitted to use specious legal claims to impede public access to the law.

Nonetheless, SMACNA has refused to concede the issue, and its legal threats have chilled Public Resource's ability to publish the law. SMACNA's refusal to litigate this matter should not render it the *de facto* victor. Accordingly, Public Resource respectfully moves this Court to enter a judgment declaring that the RS-35 is public domain material and enjoining SMACNA from asserting any copyright claim against Public Resource relating to the document.

---

[2] The full title of the manual, as identified in the regulations, is "HVAC Air Duct Leakage Test Manual, 1st edition, 1985, Sheet Metal and Air-Conditioning Contractors' National Association, Inc., 4201 Lafayette Center Drive, Chantilly, VA 20151"

## II.   **STATEMENT OF FACTS**

Public Resource's Complaint alleges the following facts, which the Court should accept as true for the purposes of a motion for default judgment that does not seek damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

### A.   **The Parties**

Plaintiff Public Resource is a California non-profit corporation that is dedicated to making primary legal materials and other important government records available to the public. (Compl. ¶ 2.) As part of this work, Public Resource acquires and posts various codes and standards that have been incorporated into federal and state laws, such as building codes, fire safety codes, pipeline safety standards, and food safety standards. (*Id.*) By improving public access to governing codes, Public Resource helps citizens, businesses, journalists, consumer advocates, researchers, and others to educate themselves regarding laws that govern their lives, laws that they are required to obey. (*Id.* ¶ 3.)

Defendant SMACNA is a self-described international association of union contractors and a "standards-setting organization." (*Id.* ¶ 10 & Ex. F.) According to its website, SMACNA has 1,834 members in 103 chapters throughout the United States, Canada, Australia and Brazil, including eight chapters in California and three in the Bay Area. (*Id.*)

### B.   **SMACNA's Efforts to Have Its Standards Incorporated Into Law**

SMACNA's mission is, in part, to create industry standards, including technical requirements, and to ensure that they are nationally adopted, particularly through incorporation into government regulations. On its website, SMACNA notes that a benefit of participation in its trade association is the ability to wield collective power to "affect positive impact in business management educational endeavors; legislative influence; industry regulatory conditions, such as code requirements, project specification development, and installation procedures." (Compl. ¶ 19 & Ex. E.) Similarly, SMACNA also notes on its website that an explicit benefit of association participation is government adoption of its proposed regulations: "The voluntary technical standards and manuals developed by SMACNA have found worldwide acceptance by the construction community, as well as foreign government agencies. ANSI, the American National

1   Standards Institute, has accredited SMACNA as a standards-setting organization."  (*Id.* ¶ 20 &

2   Ex. F.)

3        SMACNA has also been explicit elsewhere about its intent that governments adopt its

4   proposed statutory and regulatory language.  On February 20, 2003, SMACNA issued a

5   "technical paper" entitled "Building Code Update."  The paper discusses the effort by the

6   International Code Council ("ICC") "to develop a single set of comprehensive and coordinated

7   national [building] codes" that could be used in all of the United States.  According to the paper,

8   available via SMACNA's website, SMACNA's participation with the ICC further its goals of

9   having favorable model codes adopted into law:

10       The ICC Codes benefit SMACNA members & building industry professionals by
         now assisting them to move into different regions within the U.S. and international
11       environment with a single set of model codes. SMACNA's participation in the
         ICC code setting process ensured that the SMACNA Standards currently utilized
12       in the HVAC industry would be included as the basis for duct construction.  After
         the three model code organizations united to form the ICC and provided the first
13       and only complete set of building codes for the country, the Department of
         Defense (DoD) recognized the enormous benefits this simplification could provide
14       to military construction and is working to build its criteria, standards, and guide
         specifications around commercially developed consensus codes, and bring its
15       design practices more in line with those of the private sector . . .

16       SMACNA's support is for a single set of model codes with all relevant code
         organizations participating in that effort.  We believe that by participating in both
17       the ICC and NFPA 5000 Building Code process that we again see the formation of
         a final product of standards that will serve to enhance the public's confidence in
18       building code officials and keep this nation's competitive edge in the evolving
         global market.

19

20   (*Id.* ¶ 21 & Ex. G.)  Indeed, a description of this white paper on the SMACNA website makes

21   clear this goal of encouraging nationwide adoption of its standards:

22       This technical paper reviews the Model Building Code process of the International
         Code Council (ICC) and National Fire Protection Association (NFPA) Building
23       5000 Code and addresses SMACNA National's position with regards to the efforts
         of the code community to develop a single set of comprehensive and coordinated
24       national codes. SMACNA National has long been involved in the code setting
         process to ensure that the SMACNA Standards currently utilized by the HVAC
25       industry would be included as the basis for duct construction.

26   (*Id.* ¶ 21 & Ex. H.)

27        Other examples of SMACA's efforts to encourage governments to adopt its codes as

28   mandatory abound.  In its November 7, 2003 newsletter, for example, SMACNA stated that its

"Round Industrial Duct Construction Standards" had been "approved as an American National Standard" by the American National Standards Institute ("ANSI"), and that "ANSI recognition increases the potential that SMACNA's standards are internationally adopted for industry and regulatory use," while also "encouraging wider domestic use of SMACNA's standard by state- and local-code governing bodies as well as the design and engineering community." (*Id.* ¶ 22 & Ex. I.)

**C.      The Federal Government and State Governments Have Incorporated RS-35 Into Law**

After a rulemaking proceeding, the DOE expressly incorporated by reference the entire RS-35 into a final regulation that it issued on October 6, 2000. *See* Energy Code for New Federal Commercial and Multi-Family High Rise Residential Buildings, 65 Fed. Reg. 60000-11 (Oct. 6, 2000) (codified at 10 C.F.R. pts. 434 & 435). The incorporation by reference of RS-35, as codified at 10 C.F.R. § 434.403.2.9.3, states, in part:

> 403.2.9.3 Duct and Plenum Construction. All air-handling ductwork and plenums shall be constructed and erected in accordance with RS-34, RS-35, and RS-36 (incorporated by reference, *see* § 434.701).

Correspondingly, 10 C.F.R. § 434.701 identifies RS-35 to be: "HVAC Air Duct Leakage Test Manual, 1st edition, 1985, Sheet Metal and Air-Conditioning Contractors' National Association, Inc., 4201 Lafayette Center Drive, Chantilly, VA 20151."[3]  RS-35 articulates specific standards and installation and testing requirements regarding heating, ventilation, and air-conditioning systems.

The federal government incorporated by reference RS-35 after assessment of the DOE's regulations by technical experts, publication of a notice in the Federal Register, comments by members of the public and industry, a conclusion by the DOE that incorporation by reference was appropriate and necessary, and then approval of that incorporation by the Office of the Federal Register. (Compl. ¶ 28; *see also* 65 Fed. Reg. 60000-11.)  Pursuant to 1 C.F.R. § 51.3, the

---

[3] SMACNA asserted in its letter of February 5, 2013 that the 1985 manual was "only *partially* referenced in the CFR." (Compl. Ex. D (emphasis in original).)  But that is not the case. The DOE regulation expressly incorporates, at § 434.403.2.9.3, the entire SMACNA manual, not a particular portion.

Director of the Federal Register must approve each instance of incorporation by reference that federal agencies request. (*Id*. & Compl. ¶ 27.) As a standard that the Code of Federal Regulations has expressly incorporated by reference, RS-35 is now the law of the United States, and compliance with RS-35 is mandatory. (Compl. ¶ 29.)

State governments have incorporated RS-35 into law as well. *See, e.g.*, N.Y. Comp. Codes R. & Regs. tit. 19, § 1240.1 (2010) (Compl. Exs. L & M.) In addition, a Minnesota regulation previously in effect, Minn. R. 7676 (2005) (Compl. Ex. N), incorporated by reference RS-35. *See id.* § 7676.0400 Subpart 1(H) (repealed 2009, *see* https://www.revisor.mn.gov/rules/?id=7670.0400) ("The following standards and references are incorporated by reference . . . H. HVAC Air Duct Leakage Test Manual, Section 4, 1985 edition, as published by the Sheet Metal and Air Conditioning Contractors National Association, Inc., Vienna, Virginia."). Similarly, a Washington regulation previously in effect, Wash. Admin. Code § 51-11-503.10.1 (2006) (repealed 2012, *see* http://apps.leg.wa.gov/wac/default.aspx?cite=51-11-0503) (Compl. Ex. O), made compliance with RS-35 mandatory. While these Minnesota and Washington provisions have been repealed, they were at one time the laws of their respective states and thus remain documents of relevance to citizens who want to understand the history and dynamics of legislation on these issues. Citizens who fail to follow standards such as RS-35 that are incorporated by reference into regulations can be subjected to fines or imprisonment. *See, e.g.*, N.Y. Energy L. § 11-108 (McKinney 2011) (violations of N.Y. Comp. Codes R. & Regs. tit. 19, § 1240.1 (2010) punishable by fines of up to $1,000 per violation or imprisonment of up to 30 days in jail, or both); Minn. Stat. § 216C.30 (1999) (violations of Minn. R. 7676(1)(H) (2005) while it was in effect were misdemeanors punishable by fines of up to $10,000 per violation).

As noted above, *supra* Section II.B, in each instance the incorporation of RS-35 into law was no unintended outcome; SMACNA affirmatively favored having its standards incorporated into law.

### D.     This Dispute

To advance its mission, on May 3, 2012, Public Resource purchased from SMACNA's online store a paper copy of RS-35 because that manual has been incorporated into federal and

state law.  (Compl. ¶ 35.)  RS-35 cost $64.00, plus $9.98 shipping, for a total of $73.98.  (*Id.*)  On

July 4, 2012, Public Resource posted RS-35 online in PDF format on one of its websites at

https://law.resource.org/pub/us/cfr/ibr/005/smaccna.hvac.1985.pdf.  (*Id.* ¶ 36.)

On January 11, 2013, Public Resource received a notification of claimed copyright

infringement pursuant to the Digital Millennium Copyright Act requesting deletion of RS-35,

from SMACNA's agent, Attributor Corporation of San Mateo, California.  (*Id.* ¶ 38 & Ex. B.)

The notice alleged that the public posting of RS-35 on Public Resource's website infringed

SMACNA's copyright in RS-35 and demanded that Public Resource remove the document from

the website.  (*Id.*)  On January 11, 2013, Carl Malamud, President of Public Resource, responded,

explaining that the publication of RS-35 did not infringe copyright because RS-35 had been

incorporated into law.  (*Id.* ¶ 39 & Ex. B.)

On February 8, 2013, Public Resource received by email a letter, dated February 5, 2013,

from Jon L. Farnsworth, counsel for SMACNA, asserting that the posting violated SMACNA's

copyright.  (*Id.* ¶ 40 & Ex. C.)  The letter stated that if RS-35

> remains on your organization's webpage after February 14, 2013, SMACNA
> intends to pursue its legal action against your organization to the full extent
> permitted by law.  SMACNA reaffirms its copyright protection in the Publication
> and reiterates its demand for your organization to immediately remove the
> infringing material from your website.

*Id.*

Mr. Farnsworth further claimed that,

> the public may receive copies of the applicable *portions* of SMACNA's
> Publication referenced by the CFR by requesting them directly from the
> government at no charge.  Alternatively, members of the public may purchase
> SMACNA's educational materials, guides, and other publications at
> http://smacna.org/bookstore.

*Id.* (emphasis in original).  In truth, RS-35 is now no longer available for purchase online at the

SMACNA website cited by Mr. Farnsworth.  (*Id.* ¶ 10.)  Moreover, the United States does not

make RS-35 available to the general public for free, either online or on request, unless a person

travels to Washington, DC, and makes arrangements to review RS-35 at a federal government

office.  *See* Nat'l Archives, *Federal Register: Incorporation by Reference*,

http://www.archives.gov/federal-register/cfr/ibr-locations.html (last visited May 22, 2013).  A

successor SMACNA manual, the HVAC Air Duct Leakage Test Manual, 2nd Edition, published in 2012, is available for purchase at http://smacna.org/bookstore for the price of $104.  (Compl. ¶ 42.)  Nevertheless, RS-35 continues to be the document that federal regulations incorporate by reference, and thus it continues to be the law of the United States.  (*Id*. ¶ 43.)

On February 9, 2013, after receiving the letter from Mr. Farnsworth, Public Resource removed RS-35 from its website, left in its place the cover sheet, and added the correspondence between representatives of SMACNA and Public Resource.  (*Id*. ¶ 44 & Ex. D.)  On February 22, 2013, Public Resource filed this lawsuit.

On March 1, 2013, counsel for Public Resource Corynne McSherry sent a Notice of a Lawsuit and Request to Waive Service of a Summons to Mr. Farnsworth.  (Dkt. No. 11.)  Mr. Farnsworth returned to Ms. McSherry a signed Waiver of the Service of Summons, dated March 14, 2013, acknowledging that SMACNA's response to the Complaint was due on or before April 30, 2013.  (*Id.*)  On May 3, 2013, Mr. Farnsworth informed Ms. McSherry by email that SMACNA did not intend to file a responsive pleading. (Dkt. No. 18, Ex. 1.)  Accordingly, on May 8, 2013, the Clerk entered default against SMACNA.  (Dkt. No. 20.)

## III.   **JURISDICTION**

### A.   **Subject Matter Jurisdiction**

This action arises under the copyright laws of the United States, 17 U.S.C. §§ 101, *et seq*. and the United States Constitution.  This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338 and the Declaratory Judgment Act, 28 U.S.C. § 2201.

There remains a real and actual controversy between Public Resource and Defendant SMACNA regarding whether posting RS-35 infringes any SMACNA copyright.  As the Supreme Court has explained, Article III requires that the dispute at issue be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'"  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).  Here, Public Resource and SMACNA have

1   adverse legal interests based on SMACNA's assertion of copyright in a specific document, RS-

2   35, that can be resolved through a specific decree from this Court finding that the document is

3   public domain material and enjoining SMACNA from asserting a copyright claim against Public

4   Resource.

5           SMACNA's decision not to defend its position does not change the analysis.  SMACNA

6   has not, for example, granted Public Resource a broad covenant not sue, or anything like it.

7   Public Resource does not know whether SMACNA's decision is based on Public Resource's own

8   choice to take down the document pending a ruling from this court.  Of course, a declaratory

9   judgment plaintiff may eliminate an "imminent threat of harm by simply not doing what he

10  claimed the right to do," as Public Resource has done here, but that choice does not eliminate

11  subject matter jurisdiction as well.  *Id.* at 129.  Public Resource's action was effectively coerced

12  and "[t]he dilemma posed by that coercion—putting the challenger to the choice between

13  abandoning his rights or risking prosecution—is a dilemma that it was the very purpose of the

14  Declaratory  Judgment Act to ameliorate."  *Id.* (internal quotation marks omitted).

15          That coercion continues.  Indeed, SMACNA's unpredictable behavior—sharply

16  threatening legal action against Public Resource, then refusing to argue the issue before this court

17  and, when pressed, informing Public Resource only that the organization  "is not *intending* on

18  filing a responsive pleading" (emphasis added)—does nothing to assure Public Resource that

19  SMACNA will not resume its threats or sue Public Resource if Public Resource re-posts the

20  document absent a determination by this Court.  As a result, Public Resource is still forced to

21  choose between abandoning its rights or risking prosecution.

22      **B.    Personal Jurisdiction**

23          This Court has specific personal jurisdiction over SMACNA.  California's long-arm

24  statute authorizes specific personal jurisdiction over nonresident defendants to the full extent

25  permitted by the Due Process Clause of the United States Constitution. *See Panavision Int'l, L.P.*

26  *v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir. 1998).  The analysis turns on three factors:

27          (1)    The non-resident defendant must purposefully direct activities or
                   consummate some transaction with the forum or resident thereof; or perform some
28                 act which he purposefully avails himself of the privilege of conducting activities in

the forum;

(2)     the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3)     the exercise of jurisdiction must comport with fair play and substantial justice.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Because Public Resources satisfies the first two requirements, the burden shifts to SMACNA to present a "compelling case" that the exercise of jurisdiction would be unreasonable.  *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1228 (9th Cir. 2011).

### 1.     Purposeful Direction

A defendant has purposefully directed its activities at the forum if it "(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Id.* (citing *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082, 1087 (9th Cir. 2000)). Here, all three factors support specific jurisdiction.  *First*, SMACNA committed intentional acts directed at this forum: it deliberately sent a DMCA takedown notice (via its California-based agent) followed by a cease-and-desist letter to Public Resource.  *Second*, SMACNA expressly aimed its conduct at this forum: it sought to cause a California-based organization to disable public access to RS-35.  *See, e.g., Craigslist, Inc. v. Naturemarket, Inc.,* 694 F. Supp. 2d 1039, 1053 (N.D. Cal. 2010) ("Because Plaintiff is headquartered in California and maintains its website in California, Defendants' actions directly targeted California, and Defendants knew that Plaintiff would suffer the brunt of its harm in California.").  *Third*, SMACNA accomplished its purpose, thereby causing harm in California: intimidated by the legal threat, Public Resource disabled public access to RS-35.

### 2.     Arising From Forum-Related Activities

This action arises from the legal threat SMACNA made directly to Public Resource, a nonprofit corporation located in this forum, arising from Public Resource's activities in California.

### 3.     Reasonableness

Because Public Resource has established the first two requirements for exercising specific personal jurisdiction, SMACNA must present a "compelling case" that asserting jurisdiction would be unreasonable. *Mavrix,* 647 F.3d at 1228.  SMACNA waived its opportunity to make that showing by ignoring this lawsuit. *See Craigslist, Inc. v. Kerbel*, 2012 WL 3166798, at *6 (N.D. Cal. Aug. 2, 2012).  In any event, there is nothing unreasonable about asserting personal jurisdiction here.  SMACNA threatened a nonprofit corporation it knew to be located in California.  Thus, it had "fair warning" that Public Resource might seek declaratory relief. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, (1985); *see also World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980) (personal jurisdiction in a remote forum is reasonable if the defendant "should reasonably anticipate being haled into court there").

## IV.   **ARGUMENT**

After entry of default under Federal Rule of Civil Procedure 55(a), a federal district court may enter a default judgment under Rule 55(b).  "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys*, 826 F.2d at 917-18 (internal quotation marks and citation omitted).  Damages are not at issue in this case.  Procedurally proper motions for default judgment "are more often granted than denied." *PepsiCo v. Triunfo-Mex, Inc*., 189 F.R.D. 431, 432 (C.D. Cal. 1999).

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Public Resource easily meets this standard.

**A.   The Motion Is Procedurally Proper**

Public Resource has satisfied all of the requirements for a Default Judgment.  SMACNA waived formal service (Dkt. No. 11) and confirmed that it will not respond.  (Dkt. No. 18, Ex. 1.) Appropriately the Clerk has entered default.  (Dkt. No. 20.)

**B.   The Discretionary Factors Favor A Default Judgment**

Factors (4), (5), (6) and (7) can be dispensed with quickly.  Public Resource is not seeking damages (Factor 4).  The material facts are based on the public record, Defendant's own statements, and reasonable inferences therefrom (Factor 5).  Having affirmatively asserted that it does not intend to participate in the case, SMACNA cannot claim "excusable neglect" (Factor 6). Finally, federal policy does not prevent default judgment where a defendant simply refuses to respond (Factor 7).  *See Walters v. Shaw/Guehnemann Corp.*, 2004 WL 1465721, at *4 (N.D. Cal. Apr. 15, 2004) ("Although federal policy may favor decisions on the merits, Federal Rule of Civil Procedure 55(b) permits entry of default judgment in situations such as this where defendants refuse to litigate.").

As for the remaining factors, each favors a default judgment here.

**1.   The Merits and Sufficiency of Public Resource's Complaint (Factors 2 and 3)**

The Complaint contains sufficient detail to allege the cause of action and support the requested remedy of a declaratory judgment consistent with nearly two centuries of legal precedent.  No copyright exists under United States law where a standard has been incorporated into law.  In this case, RS-35 was incorporated by reference into federal regulations, and multiple states have expressly incorporated it into their official regulations.  As part of the law of the United States, it is necessarily public domain material.

**a.   The Law Is Not Subject to Copyright Protection**

It is a longstanding principle that law cannot be copyrighted.  The foundational case in U.S. law is *Wheaton v. Peters*, 33 U.S. 591 (1834), in which one of the Supreme Court's own official reporters claimed copyright in his annotated collections of the Court's opinions.  The Court declared that "no reporter has or can have any copyright in the written opinions delivered

by this Court." 33 U.S. at 668. Similarly, in *Banks v. Manchester*, 128 U.S. 244 (1888), the Court rejected a copyright claim by a court reporter for a collection of the opinions of the Ohio Supreme Court. *Id.* at 253 ("The whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all, whether it is a declaration of unwritten law, or an interpretation of a constitution or a statute."). In 1898, the Court of Appeals for the Sixth Circuit observed that "any person desiring to publish the statutes of a state may use any copy of such statutes to be found in any printed book, whether such book be the property of the state or the property of an individual." *Howell v. Miller*, 91 F. 129, 137 (6th Cir. 1898) (Harlan, J.).

The passage of time has only strengthened this principle. As the Fifth Circuit noted more than 100 years later, decisions such as *Banks* "represent[] a continuous understanding that 'the law,' whether articulated in judicial opinions or legislative acts or ordinances, is in the public domain and thus not amenable to copyright." *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 796 (5th Cir. 2002) (*en banc*), *cert. denied*, 539 U.S. 969 (2003). Outside the courts, legislators and administrators have followed suit. The 1976 Copyright Act, 17 U.S.C. § 105, specifically denies protection to U.S. government works, federal statutes, and regulations. *See id.* ("Copyright protection under this title is not available for any work of the United States Government . . . ."). The U.S. Copyright Office has expanded on this fundamental commitment:

> Edicts of government, such as judicial opinions, administrative rulings, legislative enactments, public ordinances, and similar official legal documents are not copyrightable for reasons of public policy. This applies to such works whether they are Federal, State, or local as well as to those of foreign governments.

Compendium II of Copyright Office Practices § 206.01 (1984).

Indeed, the principle that the law must be public and available to citizens to read and speak has its roots in the concept of the rule of law itself, as well as central provisions of our Constitution. *See generally* Thomas Henry Bingham, *The Rule of Law* 37-38 (Penguin Press 2011) ("The law must be accessible . . . the successful conduct of trade, investment and business generally is promoted by a body of accessible legal rules governing commercial rights and obligations."); Brian Z. Tamanaha, *On the Rule of Law: History, Politics, Theory* 34 (Cambridge

Univ. Press 2004) ("Citizens are subject only to the law, not to the arbitrary will or judgment of another who wields coercive government power.  This entails that the laws be declared publicly in clear terms in advance.").  That is why, going back to ancient times, societies that replaced the rule of tyrants with the rule of law prominently displayed the laws in public places for all to see. *See, e.g.*, Robert C. Byrd, *The Senate of the Roman Republic: Addresses on the History of Roman Constitutionalism* 33, 128, 135 (Gov't Printing Office 1995).

As this history suggests, open access to the law is essential to a free society.  Citizens are expected to obey the law, but they cannot do so effectively if they do not know it.  Further, the First Amendment right to freedom of speech is imperiled if citizens are barred from freely communicating the provisions of the law to each other.  *Cf. Nieman v. VersusLaw, Inc.*, 2013 WL 1150277, at *2 (7th Cir. Mar. 19, 2013) ("The First Amendment privileges the publication of facts contained in lawfully obtained judicial records, even if reasonable people would want them concealed.").  By the same token, equal protection of the laws and due process are jeopardized if some citizens can afford to purchase access to the laws that all of us are bound to obey (with potential criminal penalties for non-compliance), but others cannot.  *Cf. Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 666 (1966) (a state violates the Equal Protection Clause "whenever it makes the affluence of the voter or payment of any fee an electoral standard"); *see also* Magna Carta cl. 29 (1297) ("We will sell to no man, we will not deny or defer to any man either Justice or Right.").

Accordingly, for nearly two centuries it has been a fundamental precept of American law that the texts that make up the law reside in the public domain and should not be bought, sold, or rationed.  People must have the right—an unfettered right—to read and speak their own laws.

### b.    Standards That Become Law Are Not Subject to Copyright

The fundamental right to access and share the law does not disappear when the law in question is a technical standard.  Indeed, it must not, for such standards now constitute substantial portions of the laws that govern our conduct. Although these technical standards are often developed by SDOs, they are then regularly adopted into law, or "incorporated by reference." Once incorporated, they become mandatory requirements just as surely as the Code of Federal

1   Regulations, the Federal Rules of Civil Procedure, or any other binding set of government

2   regulations.

3       The process for incorporating such standard is rigorous.  In the case of RS-35, the DOE

4   followed the notice-and-comment rulemaking procedures set out in the Administrative Procedure

5   Act.  *See* 5 U.S.C. § 553.  Accordingly, the regulation incorporating RS-35 was assessed by

6   government technical experts, a notice proposing incorporation was published in the Federal

7   Register, the public and industry technical experts had an opportunity to submit comments, and,

8   at the end of this lengthy process prescribed by statute, the DOE determined that incorporation by

9   reference was appropriate.  (Compl. ¶ 28.)  The Director of the Federal Register then approved

10  the incorporation.  *See* 10 C.F.R. § 434.701.1 ("The following standards have been approved for

11  incorporation by reference by the Director of the Federal Register in accordance with 5 U.S.C.

12  § 522(a) and 1 C.F.R. part 51 . . . RS-35: HVAC Air Duct Leakage Test Manual, 1st edition,

13  1985, Sheet Metal and Air-Conditioning Contractors' National Association, Inc., 4201 Lafayette

14  Center Drive, Chantilly, VA 20151.").  With that adoption, RS-35 became the law of the United

15  States.

16      At the same time, RS-35 became public domain material.  As the Fifth Circuit concluded

17  in *Veeck*, once a standard is incorporated into the law, the people become its owner.  In that case,

18  Peter Veeck, a Texas resident who hosted a noncommercial website collecting information about

19  north Texas, purchased and then published online model building codes that had been

20  incorporated into the laws of two Texas towns.  293 F.3d at 793.  The private organization that

21  initially developed the codes accused Veeck of copyright infringement.  Sitting *en banc*, the Fifth

22  Circuit rejected the claim:

> Lawmaking bodies in this country enact rules and regulations only with the
> consent of the governed.  The very process of lawmaking demands and
> incorporates contributions by "the people," in an infinite variety of individual and
> organizational capacities.  Even when a governmental body consciously decides to
> enact proposed model building codes, it does so based on various legislative
> considerations, the sum of which produce its version of "the law."  In performing
> their function, the lawmakers represent the public will, and the public are the final
> "authors" of the law . . .
>
> [P]ublic ownership of the law means precisely that "the law" is in the "public
> domain" for whatever use the citizens choose to make of it.  Citizens may

reproduce copies of the law for many purposes, not only to guide their actions but to influence future legislation, educate their neighborhood association, or simply to amuse.

293 F.3d at 799.

The Fifth Circuit's opinion in *Veeck* is the most definitive pronouncement on the subject. *See* 1 *Nimmer on Copyright* § 5.12[A] (Matthew Bender, Rev. Ed. 2004) ("When SBCCI sought a writ of *certiorari*, the Supreme Court ordered the Solicitor General to express the views of the United States. In response, the government took the position that the Fifth Circuit had correctly decided this case. Because the Court denied the writ, this *en banc* opinion, which concludes a quarter-century of ferment, has become the most definitive pronouncement on the subject" (footnotes omitted)); *see also* 1 *Goldstein on Copyright* § 2.5.2.1 (Aspen Publishers, Rev. Ed. 2012) ("*Veeck*'s holding that, as enacted into law, privately adopted codes are uncopyrightable is sound both in law and in principle."). Its reasoning also echoes that of the First Circuit in *Bldg. Officials & Code Admin. v. Code Tech., Inc.*, 628 F.2d 730 (1st Cir. 1980) ("*BOCA*"). In *BOCA*, the court vacated a preliminary injunction issued to the creator and copyright holder of a model building code that had been adopted into law by Massachusetts. The Court remanded for further proceedings observing:

> The citizens are the authors of the law, and therefore its owners, regardless of who actually drafts the provisions, because the law derives its authority from the consent of the public, expressed through the democratic process . . . citizens must have free access to the laws which govern them . . .
>
> [I]t is hard to see how the public's essential due process right of free access to the law (including a necessary right freely to copy and circulate all or part of a given law for various purposes), can be reconciled with the exclusivity afforded a private copyright holder . . . .

628 F.2d at 734, 736.

In addition, RS-35 has become a precise "fact" (or series of facts) that can only be expressed one way and that is not subject to copyright protection. As the Fifth Circuit noted in *Veeck*, once adopted into law, "codes are 'facts' under copyright law. They are the unique, unalterable expression of the 'idea' that constitutes local law." 293 F.3d at 801. Further, the Fifth Circuit expressly rejected the notion that some laws might be "less factual" than others:

> It should be obvious that for copyright purposes, laws are "facts": the U.S.

1      Constitution is a fact; the Federal Tax Code and its regulations are facts; the Texas
       Uniform Commercial Code is a fact.  Surely, in principle, the building codes of
2      rural Texas hamlets are no less "facts" than the products of more august legislative
       or regulatory bodies.
3   *Id.*

4          *Veeck* is on all fours with this dispute.  Nonetheless, SMACNA sought to avoid *Veeck* by

5   invoking the Ninth Circuit's ruling in *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d

6   516 (9th Cir. 1997), in one of its takedown demands.  (*See* Compl. Ex. C.)  However, *Practice*

7   *Management* presented an entirely distinct set of circumstances.  *Veeck*, 293 F.3d at 804.  In that

8   case, the American Medical Association ("AMA") had created and copyrighted a coding system,

9   the Physician's Current Procedural Terminology ("CPT"), for physicians to report their services.

10  *Practice Mgmt.*, 121 F.3d at 517.  The AMA granted the federal Health Care Financing

11  Administration ("HCFA") a non-exclusive, royalty-free license to use the CPT in exchange for

12  HFCA's promise that it would not use any other coding system.  *Id.* at 517-18.  HCFA

13  subsequently created, for Medicare and Medicaid claims, its own coding system, the HCFA

14  common procedure coding system ("HCPCS"), that included the AMA codes but added new

15  information that HFCA developed.  *See Veeck*, 293 F.3d at 805 (citing 50 Fed. Reg. 40895,

16  40897).  Practice Management ("PMI"), a publisher of medical books, sought from the AMA a

17  discount to use the CPT (not the government's HCPCS) and, when the AMA refused to provide

18  the discount, PMI sought a declaratory judgment that the AMA's copyright was unenforceable.

19  *Practice Mgmt.*, 121 F.3d at 518.  Under these facts, the Ninth Circuit concluded that the AMA's

20  copyright in the CPT was, in theory, enforceable as against PMI.[4]  *Id.* at 520, 521.

21         That is not this case.  *First*, the plaintiff in *Practice Management*, PMI, was seeking to

22  invalidate the copyright on the AMA coding system only (the CPT), not the government's own

23  document, the HCPCS, and the two documents were by no means identical.  As noted in *Veeck*:

24      [U]nlike Veeck, Practice Management Information Corporation, a commercial
        publisher of medical textbooks, was not trying to publish its own version of the
25      HCPCS.  Practice Management desired to sell a cheaper edition of the AMA's
        code, which was also used by insurance companies and had other non-
26      governmental uses.  *It is not clear how the Ninth Circuit would have decided the*

27  _____
    [4] Nevertheless, the Court ultimately refused to enforce the AMA's copyright, concluding that the
28  AMA had abused its copyright by extracting HCFA's agreement not to adopt any coding system
    besides the CPT.  *Id.* at 521.

*case if Practice Management had published a copy of the HCPCS.*

293 F.3d at 805 (emphasis added). In other words, what had become "the law" was quite distinct from the coding system *as a coding system*, and it appeared that PMI was not interested in publishing the former. In this case, by contrast, as in *Veeck*, Public Resource wishes to publish only what has been expressly adopted as law.

*Second*, in contrast to the coding lists—tables with selection and arrangement of words matched to numbers—at issue in *Practice Management*, RS-35 reads and functions as a law. In *Practice Management* the medical codes were not themselves the law, even if certain regulations required persons to refer to the codes. Here, as with the text of the model building code in *Veeck*, RS-35 constitutes part of the law itself, imposing numerous specific requirements and technical specifications—in this case for people with responsibility for constructing, maintaining, and evaluating air ducts, as this sample provision illustrates:

> g. Externally insulated ducts located outside of buildings shall be sealed before being insulated, as though they were outside. If air leak sites in ducts located outside of buildings are exposed to weather, they shall receive exterior duct sealant. An exterior duct sealant is defined as a sealant that is marketed specifically as forming a positive air- and watertight seal, bonding well to the metal involved, remaining flexible with metal movement, and having a service temperature range of -30°F (-34°C) to 175°F (79°C). If exposed to direct sunlight, it shall be ultraviolet ray- and ozone-resistant or shall, after curing, be painted with a compatible coating that provides such resistance. The term sealant is not limited to adhesives or mastics but includes tapes and combinations of open-weave fabric or absorbent strips and mastics.

(Compl. Ex. A § 1.3.) Like the building code in *Veeck*, the incorporation by reference into the Code of Federal Regulations of a document such as RS-35 imposes an obligation to comply—because the provisions of the incorporated document are part of the regulation itself.

To be clear, and as several circuit courts have recognized, "copyrighted works do not 'become law' merely because a statute refers to them." *See Veeck*, 293 F.3d at 805. In *CCC Info. Servs. Inc. v. McLean Hunter Mkt. Reports, Inc.*, 44 F.3d 61 (2d Cir. 1994), for example, the Second Circuit worried that invalidating the copyrights at issue in the cases before them (a compilation of used car values that state insurance regulations had identified as an alternative standard) could have called into question, for example, "the copyrightability of school books once

they were assigned as part of a mandatory school curriculum." *Id*. at 74.

In this case, however, the material in question has not simply been approved by a government agency. *See Veeck*, 293 F.3d at 805 ("*CCC* and *Practice Management* 'involved compilations of data that had received governmental approval, not content that had been enacted into positive law'" (quoting 1 *Goldstein on Copyright* § 2.49 n.45.2)). Rather, it has been expressly adopted as the law of the land through the incorporation by reference process set out by federal statute and regulations. As much as landmark health care acts or Supreme Court civil rights decisions, technical codes like RS-35—for building, electrical, plumbing, transportation and other vital functions—touch the lives of Americans every day. Business owners, workers, and consumers need to know these directives in order to operate their businesses lawfully and to determine whether neighbors, contractors, or competitors are in compliance. In addition, violations of regulations that incorporate standards such as RS-35 can even carry criminal penalties. *See, e.g.*, N.Y. Energy L. § 11-108 (McKinney 2011) (providing for fines of up to $1,000 per violation or imprisonment of up to 30 days in jail, or both, for violations of regulations that include N.Y. Comp. Codes R. & Regs. tit. 19, § 1240.1 (2010), which incorporates RS-35 by reference).

*Third,* the concern (expressed by the courts in *Practice Management*, 121 F.3d at 518-19, and *CCC*, 44 F.3d at 74) that depriving privately created materials of copyright protection might undermine the economic incentive to create them, does not apply here. RS-35's only value now is *as law*. It is no longer the operative SMACNA manual for air duct leakage testing; it was superseded by a new SMACNA manual in 2012. SMACNA no longer even offers RS-35 for sale on its website; it sells the 2012 manual instead. SMACNA does not appear to be seeking revenue from RS-35. Any economic incentive for creating RS-35 has run its course.[5]

Moreover, industry organizations like SMACNA have strong alternative reasons to continue creating standards. The organizations presumably believe their standards are

---

[5] Even if the document was available for purchase, to charge for it would be inappropriate "monopoly pricing of the law, not copyright pricing to the market for voluntary consensus standards." Peter L. Strauss, *Private Standards Organizations and Public Law*, Columbia Public Law Research Paper No. 13-334, Dec. 27, 2012, at 13, *available at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2194210.

appropriate, carefully crafted guidelines for their industry, and they want their existing and

planned products and services to comply with the law.  An efficient way to do that is to write the

laws themselves.  As the court in *Veeck* observed,

> "[I]t is difficult to imagine an area of creative endeavor in which the copyright
> incentive is needed less.  Trade organizations have powerful reasons stemming
> from industry standardization, quality control, and self-regulation to produce these
> model codes; it is unlikely that, without copyright, they will cease producing
> them."

293 F.3d at 806 (quoting 1 *Goldstein* § 2.5.2, at 2:51).  Indeed, if SDOs oppose having the law

adopt their standards as public domain, they could oppose incorporation in the rulemaking

proceedings, explaining that they do not wish to surrender control over their work.  Not

surprisingly, they do not.  Further, these industry organizations have many other means of earning

revenue, including selling interpretive material related to incorporated standards, *id.* at 806,

selling other standards that are not incorporated into law, and charging membership dues and

conference fees, all of which are current sources of income for SMACNA.  *See* Sheet Metal and

Air Conditioning Contractors' National Association, Form 990, Filing to the Internal Revenue

Service, Period Ending 12/2011, Employer ID 36-2099048, *available at*

https://bulk.resource.org/irs.gov/eo/2012_11_EO/36-2099048_990O_201112.pdf (last visited

May 22, 2013).[6]

Indeed, RS-35 is a prime example of the insignificance of the copyright incentive for the

standards-setting activities of organizations such as SMACNA.  Fifteen years passed between the

initial release of RS-35 and its incorporation into DOE regulations.  The argument that the

activities of SDOs would be animated by contingent events so far in the future strains credulity,

---

[6] As part of its mission of improving access to public records, and in partnership with the Internal
Revenue Service, Public Resource publishes millions of tax records for exempt organizations and
private foundations, including SMACNA.  *See* Public Resource, *Reports of Exempt
Organizations*, *available at* https://bulk.resource.org/irs.gov/eo/readme.html (last visited May 22,
2013) (noting that "[t]his service provides bulk access to 6,905,384 filings of exempt
organizations to the Internal Revenue Service. Each month, we process DVDs from the IRS for
Private Foundations (Type PF), Exempt Organizations (Type EO), and unrelated business income
(Type T).").  Form 990s are available to the public through a variety of sources.  *See, e.g.*,
GuideStar, *Sheet Metal & Air Conditioning Contractors Natl Assn Inc.*, *available at*
http://www.guidestar.org/organizations/36-2099048/sheet-metal-air-conditioning-contractors-
natl-assn.aspx (last visited May 22, 2013) (offering several recent SMACNA Form 990s for
$125).

especially given that SMACNA stopped selling RS-35 even after it had been incorporated into federal and state law.  Moreover, the Fifth Circuit's decision in *Veeck*, which held that laws such as RS-35 cannot be copyrighted, was reached over a decade ago, and the U.S. Solicitor General publicly acknowledged that "[t]he court of appeals reached the correct result" in that case.  Brief for the United States as Amicus Curiae, *S. Bldg. Code Cong. Int'l, Inc. v. Veeck* (2003) (No. 02-355), at 1, *available at* http://www.justice.gov/osg/briefs/2002/2pet/6invit/2002-0355.pet.ami.inv.pdf.  Accordingly, SDOs such as SMACNA have been on notice for more than a decade that copyright claims regarding standards such as RS-35 that are incorporated into law likely would not be enforceable and yet they have continued to develop them, including SMACNA's 2012 updated edition of the HVAC Air Duct Leakage Test Manual.  *See* 1 *Nimmer on Copyright* § 5.12[A] (noting that *Veeck* "has become the most definitive pronouncement on the subject").

### c.   Copyright Protection is Particularly Harmful Under the Circumstances

The facts of this case demonstrate the real danger of allowing private organizations to claim copyright in the law.  Given that it has apparently lost interest in making RS-35 accessible (even at a high cost), SMACNA should be welcoming Public Resource's effort to step in and fill the gap.  Instead, it has aggressively warned Public Resource not to share it.  In other words, SMACNA no longer wishes to provide access to the law, but doesn't want anyone else to do so either.  *Compare Practice Mgmt.*, 121 F.3d at 519 ("There is no evidence that anyone wishing to use the CPT has any difficulty obtaining access to it.").

This is a remarkable position.  It runs directly contrary to the fundamental purposes of copyright: to promote the development and dissemination of writings that shape our common culture—including our laws.  *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 n.10 (1994) (noting that "the goals of the copyright law [are] to stimulate the creation and publication of edifying matter" (internal quotation marks and citation omitted)).

Not coincidentally, SMACNA's position would also undermine the requirements of the Freedom of the Information Act (FOIA), 5 U.S.C. § 552.  Under FOIA, materials, such as

standards and technical requirements, that are incorporated by reference into a federal regulation are deemed effectively published only if such directives are "reasonably available to the class of persons affected thereby."  5 U.S.C. § 552(a)(1); 1 C.F.R. § 51.7(a)(4).  That reasonable availability is precisely what Public Resource hopes to promote.

### 2.   Prejudice to Public Resource (Factor 1)

#### a.   Prejudice to Public Resource

Denial of a default judgment would prejudice both Public Resource and the public interest.  Public Resource wishes to do nothing more or less than improve public access to a manual that is no longer sold by SMACNA but nonetheless remains incorporated into federal and state law.  It seeks no compensation for the publication.

SMACNA has repeatedly threatened to sue Public Resource for this activity.  It declines now to show up in Court to defend its position, but nothing other than a judgment prevents it from instigating a new lawsuit against Public Resource should Public Resource re-post the document.  Moreover, Public Resource has invested the time and extensive effort to improve on its initial posting.  It can now re-post RS-35 in the more useful HTML format upon resolution of this lawsuit.   Absent a default judgment, however, a legal sword of Damocles hangs over that effort.

#### b.   Prejudice to the Public Interest

Public Resource seeks to publish RS-35—and other materials that have been incorporated into the law—because of the far-reaching benefits to the public interest of making such materials broadly available.  When legal requirements governing building safety, transportation safety, energy safety, food and water safety, and other important areas are readily available to all without restriction, society benefits.  First responders and government officials can do more to protect citizens.  Small enterprises can more easily and affordable comply with the law and build new businesses.  Students, educators, scientists, engineers, policy advocates, journalists, and government workers can more easily read the standards; learn about technology, commerce, and government; and consider way to improve the standards.

The public can also work to improve upon the accessibility and usefulness of the

standards by making searchable databases or better navigational tools.  Of the standards it has published, Public Resource has reset several hundred into HTML files and is now prepared to post RS-35 in this format.  Public Resource also has redrawn many graphics within standards in the open Scalable Vector Graphics (SVG) format, so they can be manipulated.  Public Resource has reset mathematical formulas into the Math Markup Language (MML), providing better access for the visually impaired and better functionality for users.  Other transformative uses become possible with HTML documents.  Proper metadata can be added to document headers, making them discoverable by search engines.  Access protocols allow bulk access and resynchronization to large collections of documents.  Digital signatures allow users to verify that documents have not been modified.

Where, as here, a standard is not available anywhere online, the public interest in allowing Public Resource to post the standard is particularly strong.  Indeed, SMACNA's opposition to publication of RS-35 is indefensible as a matter of law and policy.  Moreover, Public Resource has acted in good faith, responding amicably to SMACNA's concerns and then, faced with a serious legal threat, disabling access to the document and asking this Court to rule on the dispute.  The Court should not allow SMACNA's failure to participate in this litigation to diminish the remedies Public Resource deserves and impede public access to the law.

## V.    RELIEF SOUGHT

For the foregoing reasons, Plaintiff Public Resource seeks a declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq.* and the Copyright Act (Title 17 of the United States Code).  Specifically, Plaintiff requests that the Court issue an Order (1) declaring that the 1985 HVAC Air Duct Leakage Test Manual, incorporated into the Code of Federal Regulations as RS-35, *see* 10 C.F.R. § 434.701, is public domain material under the Copyright Act of the United States of America, the United States Constitution, and judicial decisions construing such laws, doctrines, and provisions; (2) enjoining SMACNA, its agents, attorneys, and assigns from asserting a copyright claim against Public Resource in connection with any publication of RS-35; and

///

///

1    (3) awarding Public Resource costs and attorneys fees incurred in connection with this litigation,

2    the amount to be determined in a subsequent proceeding.

3    Dated:    May 29, 2013                By: */s/ Andrew P. Bridges*
                                           CORYNNE MCSHERRY (SBN 221504)
4                                          corynne@eff.org
                                           MATT ZIMMERMAN (SBN 212423)
5                                          mattz@eff.org
                                           ELECTRONIC FRONTIER FOUNDATION
6                                          815 Eddy Street
                                           San Francisco, CA 94109
7                                          Telephone: (415) 436-9333
                                           Facsimile: (415) 436-9993
8
                                           DAVID HALPERIN (admitted *pro hac vice*)
9                                          davidhalperindc@gmail.com
                                           1530 P Street NW
10                                         Washington, DC  20005

11                                         ANDREW P. BRIDGES (SBN 122761)
                                           abridges@fenwick.com
12                                         JAMES J. VARELLAS III (SBN 253633)
                                           jvarellas@fenwick.com
13                                         KATHLEEN LU (SBN 267032)
                                           klu@fenwick.com
14                                         FENWICK & WEST LLP
                                           555 California Street, 12th Floor
15                                         San Francisco, CA  94104

16                                         Attorneys for Plaintiff
                                           PUBLIC.RESOURCE.ORG
17

18

19

20

21

22

23

24

25

26

27

28

MEMO OF POINTS AND AUTHORITIES            24            CASE NO. 13-cv-00815-SC