1   ANDREW E. MONACH (CA SBN 87891)
    AMonach@mofo.com
2   NICHOLAS S. NAPOLITAN (CA SBN 251762)
    NNapolitan@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Telephone: 415.268.7000
5   Facsimile: 415.268.7522

6   Attorneys for Defendant
    SHEET METAL AND AIR CONDITIONING
7   CONTRACTORS' NATIONAL ASSOCIATION, INC.

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11

12   PUBLIC.RESOURCE.ORG,                      Case No.    cv-13-0815 (SC)

13                    Plaintiff,               **DEFENDANT'S MEMORANDUM
                                               OF LAW IN PARTIAL
14          v.                                 OPPOSITION TO PLAINTIFF'S
                                               MOTION FOR DEFAULT
15   SHEET METAL AND AIR CONDITIONING          JUDGMENT AND IN
     CONTRACTORS' NATIONAL ASSOCIATION,        OPPOSITION TO REQUEST FOR
16   INC.,                                     ATTORNEYS' FEES**

17                    Defendant.

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Defendant Sheet Metal and Air Conditioning Contractors' National Association ("SMACNA") submits this memorandum primarily to oppose Plaintiff's request for attorneys' fees related to its Motion for Default Judgment.  The request for attorneys' fees is not procedurally proper at this time under Local Rule 54-5, and should be rejected on that basis alone.  But to avoid any claim of waiver, SMACNA sets forth its substantive objections to any award of fees in this case.

SMACNA has made an economically rational decision not to litigate its legitimate copyright claims so that this case may be brought to an end now, without further expense to the parties or further expenditure of judicial resources.  SMACNA submits this brief for the sole purpose of opposing Plaintiff's unwarranted request for attorneys' fees and for an injunction.

In the interest of avoiding unnecessary expenses, SMACNA submits that this matter should be decided on the papers, and that oral argument is unnecessary.  SMACNA requests that the Court deny Plaintiff's request for attorneys' fees and cancel the hearing set for July 19, 2013.

**BACKGROUND**

SMACNA is a non-profit, international association of sheet metal contractors that develops and publishes technical standards, safety guidelines and manuals for its members.  (Sandusky Decl. ¶ 2; *see also* http://www.smacna.org/about/.)  SMACNA customarily files for copyrights on its published materials with the United States Copyright Office and receives revenue from these copyrighted materials.  (Sandusky Decl. ¶ 3.)

SMACNA is the holder of a registered copyright for its 1985 HVAC Air Duct Leakage Test Manual (hereafter, the "Disputed Copyrighted Publication").  (*See* Compl. Ex. A.)  The Disputed Copyrighted Publication contains a cover page with an explicit copyright notice, including the following recital:

> Except as allowed in the Notice to Users and in certain licensing contracts, no part of this book may be reproduced, stored in a retrievable system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of the publisher.

(*Id.*)

1    Despite SMACNA's federally-registered copyright and the aforementioned copyright

2  notice, Plaintiff Public.Resource.Org posted the Disputed Copyrighted Publication on its website

3  without authorization or permission from SMACNA.  SMACNA sent several cease and desist

4  letters before Plaintiff removed the Disputed Copyrighted Publication from its website.  (*See*

5  Compl. Exs. B-C.)  Plaintiff then filed its Complaint, seeking to invalidate SMACNA's copyright

6  and arguing that SMACNA's copyrighted work became public property when the government

7  incorporated the Disputed Copyrighted Publication by reference into a federal regulation.  *See* 10

8  C.F.R. § 434.403.2.9.3.

9    Once Plaintiff filed this suit, it became apparent to SMACNA that Plaintiff would use this

10  litigation to pursue a public policy agenda.  (Sandusky Decl. ¶ 6.)  Indeed, Plaintiff appears to be

11  a well-funded organization with a principal and attorneys intent on pursuing public policy change

12  via litigation.  (*Id.*; *see also* Brendan Greeley, *One Man's Quest to Make Information Free*,

13  Businessweek, Apr. 12, 2012 (attached as Sandusky Decl. Ex. A).)  Plaintiff bluntly

14  acknowledges that this case is part of its "mission," which has "come to encompass the

15  publication of health and safety codes that federal, state and local governments have incorporated

16  into law."  (Pl.'s Mot. for Default J. at 1:10-11, 2:5-7.)

17    SMACNA must make difficult decisions based on its limited resources.  (Sandusky Decl.

18  ¶ 6.)  While SMACNA has a solid legal claim based on its valid and enforceable copyright,

19  SMACNA no longer sells the Disputed Copyrighted Publication because it has been superseded

20  by other publications.  (*Id.*, ¶¶ 3, 6; Compl. ¶¶ 41-42.)  It therefore made little sense to protect this

21  copyright by expending hundreds of thousands of dollars over many years against an opponent

22  with substantial resources.  (Sandusky Decl. ¶ 6.)  Consequently, once the situation became clear,

23  SMACNA made a reasoned decision not to respond to the Complaint, rather than to spend large

24  sums of money to enforce this particular copyright.

25    SMACNA informed Plaintiff that it would not be filing a responsive pleading to the

26  Complaint.  (Farnsworth Decl. ¶ 3.)  SMACNA and its counsel did so in the belief that this

27  approach would put the matter to rest without any additional expense.  (*Id.*)  The clerk for the

28  Northern District of California entered default in Plaintiff's favor on or about May 5, 2013.

1    (Docket No. 20.)  Plaintiff then submitted a voluminous Motion for Default Judgment and

2    requested its attorneys' fees.  (Docket No. 22.)

3            SMACNA opposes the request for attorneys' fees because under governing Ninth Circuit

4    law, attorneys' fees in a copyright action are typically awarded if the copyright holder asserted

5    and pursued a frivolous or bad faith claim, or the award of fees would otherwise advance the

6    purposes of the Copyright Act.  Here, the situation is the opposite.  Although SMACNA had a

7    good-faith basis for pursuing a copyright infringement action under governing Ninth Circuit law,

8    it has elected not to pursue such an action, not to litigate the continuing copyright in the Disputed

9    Copyrighted Publication, and to file a binding covenant not to sue, to put this manufactured

10   dispute to rest.

11                                        **ARGUMENT**

12   **I.       ATTORNEYS' FEES SHOULD NOT BE AWARDED.**

13          Plaintiff seeks its attorneys' fees in conjunction with its Motion for Default.  (Pl.'s Mot.

14   for Default J. at 24.)  Plaintiff failed to cite any applicable statute or case law to support its

15   request for attorneys' fees in its motion.  Plaintiff is presumably relying on 17 U.S.C. § 505 of the

16   Copyright Act.  That statute provides:

17                   In any civil action under this title, the court in its discretion may
                     allow the recovery of full costs by or against any party other than
18                   the United States or an officer thereof.  Except as otherwise
                     provided by this title, the court may also award a reasonable
19                   attorney's fee to the prevailing party as part of the costs.

20   17 U.S.C. § 505.

21          The determination of whether to award fees to the prevailing party under 17 U.S.C. § 505

22   is a matter within the court's discretion in light of several factors articulated in the case law.

23   *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534-35 (1994); *Smith v. Jackson*, 84 F.3d 1213, 1221 (9th

24   Cir. 1996), *superseded on other grounds by* 18 U.S.C. § 1961(1)(B).  Factors that should affect a

25   district court's decision to award fees include:  (1) the degree of success obtained; (2)

26   frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and

27   legal arguments; and (5) the need, in particular circumstances, to advance considerations of

28   compensation and deterrence.  *Smith*, 84 F.3d at 1221.

1     In the Ninth Circuit, fees typically have been denied to non-copyright holders under

2  17 U.S.C. § 505 where the copyright holder's claim was neither frivolous nor pursued in bad

3  faith.  *See, e.g.*, *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007) (affirming

4  denial of fees where there was "ample support for the district court's finding that [the copyright

5  holder's] legal claims are not frivolous or objectively unreasonable"); *Smith*, 84 F.3d at 1221

6  (affirming denial of fees where district court "noted that it did not find frivolousness or that the

7  suit was motivated by bad faith [and] that the claims had a legal basis sufficient to survive

8  summary judgment and a factual basis supported by expert testimony."); *Bibbero Sys. Inc. v.*

9  *Colwell Sys. Inc.*, 893 F.2d 1104, 1108-09 (9th Cir. 1990).[1]  Just two weeks ago, for example, the

10  District Court in the Central District of California denied an award of attorneys' fees to actress

11  Angelina Jolie after she prevailed in defending a copyright infringement claim and received a

12  judgment on the pleadings.  The District Court emphasized that the plaintiff's claims, although

13  unsuccessful, were not "frivolous or objectively unreasonable.  A frivolous claim is one that

14  'lacks an arguable basis either in law or in fact' or is not 'colorable' or is 'without arguable

15  merit.'"  *Braddock v. Jolie*, No. 12-5883, slip op. at 3 (C.D. Cal. June 7, 2013) (citations omitted)

16  (attached as Attachment A).

17     In this case, Plaintiff does not and cannot allege that SMACNA acted in bad faith or with

18  an improper motivation.  It is undisputed that SMACNA has a federally-registered copyright on

19  the Disputed Copyrighted Publication.  Had SMACNA chosen to litigate, the sole dispute would

20  have been the legal question of whether SMACNA's copyright was still valid after the

21  government incorporated the Disputed Copyrighted Publication by reference into a federal

---

[1] In *Bibbero*, the Ninth Circuit affirmed a denial of fees, even though plaintiff's copyright was invalid as a matter of law.  893 F.2d at 1108-09.  This was because there was "apparent support" for the copyright holder's claim, and this cut against the defendant's argument that the copyright claims had been asserted in bad faith and were frivolous.  *Id.*  Although the Supreme Court's *Fogerty* decision in 1994 expanded the factors that a court can consider when ruling on a fee motion against a copyright holder, "[p]ost-*Fogerty* cases awarding fees to prevailing [non-holders] still tend to focus on the [holder's] bad faith motivation, hard-ball tactics [], or objective unreasonableness . . . .  Conversely, most courts deny fees to prevailing defendants when the plaintiffs' claims were not motivated by bad faith."  5-14 *Nimmer on Copyright* § 14.10[D][3][b].

1   regulation.  There is no question that SMACNA's assertion of its copyright in its cease and desist

2   letters was in good faith and based on legitimate legal principles.

3          SMACNA's cease and desist letter cited and discussed, among other cases, *Practice*

4   *Management Information Corp. v. American Medical Ass'n*, 121 F.3d 516 (9th Cir. 1997),

5   *amended by* 133 F.3d 1140 (9th Cir. 1998).  (*See* Compl. Ex. C.)  *Practice Management* remains

6   controlling Ninth Circuit precedent.  It involved facts remarkably similar to this case.  The

7   American Medical Association ("AMA") had developed and copyrighted diagnostic codes

8   ("CPTs") that the Health Care Financing Agency regulations required to be used by applicants for

9   Medicare reimbursement.  121 F.3d at 518.  The plaintiff argued that incorporation by reference

10  in the regulations put the copyrighted CPTs in the public domain, and the Ninth Circuit squarely

11  rejected this argument:  "We affirm the district court's ruling that the AMA did not lose its

12  copyright when use of the CPT was required by government regulations . . . ." *Id.* at 521.[2]

13         Recognizing that its position is contrary to binding Ninth Circuit precedent, Plaintiff

14  devotes nearly ***five pages*** of its brief to its attempt to impose a narrow reading on *Practice*

15  *Management*, in an effort to preclude its application to the facts of this case.  (Pl.'s Mot. for

16  Default J. at 17-21.)  Plaintiff proposes that *Practice Management* should not apply because the

17  CPT was not "identical" to the regulation in that case, because those "coding lists" did not

18  "function[] as a law," and because the economic incentives stack up differently.  (*Id.*)  But

19  nothing in *Practice Management* requires or even supports these limitations.  Quite the contrary.

20  The Ninth Circuit explicitly foreshadowed cases exactly like this one when it explained why

21  copyrighted materials do not enter the public domain once adopted by a government agency:

22              [I]nvalidating [the AMA's] copyright on the ground that the CPT
             entered the public domain when HCFA required its use would
23           expose copyrights on a wide range of privately authored model
             codes, standards, and reference works to invalidation.  ***Non-profit***
24           ***organizations that develop these model codes and standards warn***
             ***they will be unable to continue to do so if the codes and standards***
25           ***enter the public domain when adopted by a public agency***.

26

27  _____
    [2]The court found, for reasons inapplicable to this case, that the AMA had engaged in copyright
28  misuse in its licensing terms that rendered the copyright unenforceable.  121 F.3d at 520-21.

1    *Practice Mgmt.*, 121 F.3d at 519 (emphasis added).  The Ninth Circuit went on to cite a list of

2    standards (not unlike the Disputed Copyrighted Publication) published by non-profit

3    organizations (not unlike SMACNA), which the court did not wish to threaten by invalidating the

4    AMA's copyright to the CPTs.  *Id*. at 519 nn.5-6.

5            Plaintiff cites a Fifth Circuit case, *Veeck v. Southern Building Code Congress*

6    *International, Inc.*, 293 F. 3d 791 (5th Cir. 2002), which held in a 9-6 *en banc* decision that there

7    was no enforceable copyright in a model building code created for the sole purpose of

8    incorporation into local law.  The case is readily distinguishable:  Unlike *Practice Management*,

9    the *Veeck* opinion set forth strict "limits of this holding," and ruled that a copyright is invalid only

10   when "the text of the model [code] serves no other purpose than to become law," and the author's

11   "sole motive and purpose [was] creating codes that will become obligatory in law."  *Id*. at 803-05.

12   The majority took pains to distinguish the case from situations like those in *Practice Management*

13   (and this case) where the copyrighted publication was not created solely as a model law.  *Id*.

14   Unlike the plaintiff in *Veeck*, SMACNA's primary goal in publishing standards is not the creation

15   of obligatory law.  (Sandusky Decl. ¶4.)

16           Even if *Veeck* could be extended to the facts in this case, it would not make SMACNA's

17   cease and desist letters frivolous or in bad faith.  As a Fifth Circuit decision, *Veeck* is not binding

18   here, and it does not represent the majority position among the circuits that have addressed this

19   issue.[3]  And even in the Fifth Circuit, six of the fifteen judges disagreed with the *Veeck* holding.

20   Although Plaintiff may endorse the Fifth Circuit majority's reasoning, it was not bad faith for

21   SMACNA to ask Plaintiff to abide by the law of the Ninth Circuit and to take down its

22   unauthorized publication of SMACNA's copyrighted materials.

23

24   _____

25   [3]The Second Circuit has observed that the Plaintiff's position raises serious constitutional
     concerns, as it would result in an eminent-domain-like situation whereby the government's
26   incorporation of a copyrighted document by reference automatically eviscerates the copyright,
     even though no compensation is paid to the copyright holder.  *See CCC Info. Servs. v. MacLean*
27   *Hunter Mkt. Reports*, 44 F.3d 61, 74 (2d Cir. 1994) ("[A] rule that the adoption of such a
     reference by a state legislature or administrative body deprived the copyright owner of its
28   property would raise very substantial problems under the Takings Clause of the Constitution.").

1    Plaintiff filed this case with the intention of changing Ninth Circuit law and vindicating

2  the Fifth Circuit's position in *Veeck*.  Fortunately, this Court does not need to resolve this

3  potential circuit split, nor could it overturn Ninth Circuit precedent.  To resolve Plaintiff's fee

4  demand, this Court only needs to find that SMACNA had a reasoned, good-faith basis for asking

5  Plaintiff to stop infringing its registered copyright.  *UMG Recordings, Inc. v. Veoh Networks,*

6  *Inc.*, No. 07-5744, 2010 U.S. Dist. LEXIS 44430, at *6 (C.D. Cal. Apr. 6, 2010) ("[t]here is

7  typically no award of fees in cases involving issues of first impression or advancing claims that

8  were neither frivolous nor objectively unreasonable") (citation omitted), *aff'd in part and*

9  *remanded in part on other grounds*, __ F.3d __, 2013 U.S. App. LEXIS 5100 (9th Cir. Mar. 14,

10  2013).  Courts routinely deny fees under 17 U.S.C. § 505 where a party has a good faith basis for

11  asserting its position.[4]  To do otherwise would punish copyright holders who act to protect

12  colorable claims, and thereby undermine the purpose of the Copyright Act.  *See McCulloch v.*

13  *Albert E. Price, Inc.*, 823 F.2d 316, 322-23 (9th Cir. 1987) ("Attorneys' fees to prevailing [non-

14  copyright holders] should be awarded circumspectly to avoid chilling a copyright holder's

15  incentive to sue on colorable claims.") (citation and internal quotations omitted).

16    If fees are awarded to Public.Resource.Org, the public will also be harmed.  As the Ninth

17  Circuit recognized in *Practice Management*, adopting the Plaintiff's legal position would provide

18  a disincentive for organizations like SMACNA to invest resources and produce future works,

19  even though such organizations "arguably . . . do a better job than could the state alone in seeing

20  that complex yet essential regulations are drafted. . . ."  *See Practice Mgmt.*, 121 F.3d. at 518-19

21  (citation omitted); *SMC Promotions, Inc. v. SMC Promotions*, 355 F. Supp. 2d 1127, 1137-38

22  (C.D. Cal. 2005) ("copyrighted works must be protected as an incentive for people to create new

23  works") (citation omitted).  Unwarranted awards of attorneys' fees against such copyright holders

24

25  [4] *See, e.g.*, *DC Comics v. Pac. Pictures Corp.*, No. 10-3633, 2013 U.S. Dist. LEXIS 49119, at *12 (N.D. Cal. Apr. 4, 2013) (denying fees under 17 U.S.C. § 505 where "Defendants also had a legal foundation for their argument"); *Corbello v. Devito*, No. 08-867, 2012 U.S. Dist. LEXIS 94158,

26  at *11-12 (D. Nev. July 9, 2012) (denying fees under 17 U.S.C. § 505 because the party "had a good-faith basis for believing the Work had been infringed"); *Walker v. Viacom Int'l, Inc.*, No.

27  06-4931, 2008 U.S. Dist. LEXIS 38882, at *26 (N.D. Cal. May 13, 2008) (denying fees under 17 U.S.C. § 505 because "this case was brought in good faith").

28

1    who merely assert their legitimate rights outside the courtroom would have a similar chilling

2    effect on the creation of safety and testing standards that benefit the public.

3         Finally, when a party with a valid or colorable claim elects not to litigate because the costs

4    of litigation would outweigh the benefits of winning a lawsuit, the public interest would be

5    adversely affected by a fee award.  Public policy favors the efficient resolution of disputes

6    without undue litigation costs or consumption of judicial resources.  Such awards would

7    discourage the prompt resolution of disputes that are not worth fighting over, and encourage

8    future copyright holders to make a federal case out of every claim, regardless of the value of the

9    work.  For all of the above-stated reasons, Plaintiff should not be awarded attorneys' fees.

10   **II.    PLAINTIFF'S DEMAND FOR AN INJUNCTION IS MOOT AND**
     **UNNECESSARY**

11

12        At the end of Plaintiff's brief, Plaintiff offhandedly requests that the Court use its

13   extraordinary judicial power to enjoin SMACNA from asserting a copyright claim against

14   Plaintiff with respect to the Disputed Copyrighted Publication.  (Pl.'s Mot. for Default J. at 23.)

15   As Plaintiff has cited no legal basis for its request, for now it is sufficient to state that such an

16   "extraordinary remedy" is unnecessary and inappropriate, given that SMACNA has voluntarily

17   and irrevocably entered a covenant not to sue Plaintiff for copyright infringement relating to the

18   Disputed Copyrighted Publication.  (Sandusky Decl. ¶ 10.)  *See, e.g.*, *Jacobsen v. Katzer*, 609 F.

19   Supp. 2d 925, 936-37 (N.D. Cal. 2009) (finding that injunction is improper where plaintiff "failed

20   to demonstrate that there is any continuing or ongoing conduct that indicates future harm is

21   imminent").

22   **III.   PLAINTIFF'S SUBMISSIONS ARE EXCESSIVE**

23        If the court determines Public.Resource.Org is entitled to its attorneys' fees, this Court

24   should drastically reduce any proposed fee award based on the unnecessary and voluminous

25   submissions by Plaintiff related to its Motion.  Plaintiff's voluminous submissions appear to be

26   based exclusively on its intent to appeal any adverse decision to the highest court and to attempt

27   to overturn existing law.  SMACNA has made, and continues to make, every effort to avoid

28

1    litigation expenses.  SMACNA should not be forced to finance Plaintiff's "mission" to change

2    public policy via litigation.

3                                              **CONCLUSION**

4            Based on the foregoing, SMACNA respectfully requests that this court deny Plaintiff's

5    Motion for Default Judgment to the extent it seeks attorneys' fees or an injunction, and that this

6    Court take Plaintiff's Motion for Default Judgment under advisement without oral argument or

7    hearing.

8

     Dated: June 17, 2013                          MORRISON & FOERSTER LLP
9

10

11                                     By:    /s/  Nicholas S. Napolitan
                                              Nicholas S. Napolitan
12
                                              Attorneys for Defendant
13                                            SHEET METAL AND AIR
                                              CONDITIONING CONTRACTORS'
14                                            NATIONAL ASSOCIATION, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28